UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

RICARDO DeJESUS,

        Plaintiff,                       Case No. 1:08-cv-1051

v.                                            Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

        Defendants.
_____/

**OPINION**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff Ricardo DeJesus presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Bellamy Creek Correctional Facility (IBC).  He sues the MDOC, IBC, MDOC Manager of Prisoner Affairs James Armstrong, MDOC Administrative Assistant for Prisoner Affairs K. MacEachern, and the following IBC employees: Warden Kenneth McKee, Assistant Deputy Wardens D. Johnson and S. Schooley, Lieutenant (unknown) Livingston, Resident Unit Managers (RUMs) R. Wright and (unknown) Hull, Assistant RUMs (ARUMs) B. Hadden and (unknown) Wilson, Resident Unit Officers (RUOs) (unknown) Mata, (unknown) Sedore, (unknown) Mask, (unknown) Hickock, (unknown) Bennickson, and Grievance Coordinator R. Carpenter.

Plaintiff alleges that he arrived at IBC on September 23, 2005 and was placed into administrative segregation approximately three years ago. While in segregation, Plaintiff apparently has experienced a few delays in receiving his incoming issues of <u>USA Today Sports Weekly Magazine</u>.  He complains that on December 19, 2007, during regular mail delivery, RUO Mata failed to deliver his magazine and told Plaintiff that he did not receive a magazine that day.  At about 7:00 p.m. that same day, RUO Wilson delivered the magazine to Plaintiff.  Plaintiff alleges that he attempted to resolve the issue with Defendant Hadden, who allegedly threatened Plaintiff with staying in segregation if he filed a grievance about the delay in receiving his magazine.  Plaintiff grieved the delay in his magazine delivery, contending that it had been deliberately withheld by officers.  The grievance was rejected by Defendant R. Carpenter with Defendant D. Johnson's consent.  On January 7, 2008, Defendant McKee denied the Step II appeal, and on February 28,

2008, Defendant James Armstrong denied the Step III appeal, upholding the rejections at Steps I and II. Plaintiff also sent a letter to Defendant MacEachern in Internal Affairs. MacEachern advised Plaintiff that his remedy was the grievance process.

On Friday, February 29, 2008, Plaintiff did not receive delivery of his ESPN Sports Magazine during Defendant Wilson's 5:30 p.m. mail delivery. When Plaintiff complained, Wilson said he would check the unit's bubble area, but he was sure that there was no magazine for Plaintiff. Defendant Wilson later told Plaintiff that no magazine had been received. After the shift change at 10:30 p.m., Plaintiff spoke with a third-shift officer. At about 3:00 a.m., the officer located the magazine and delivered it to Plaintiff, informing him that it was in plain sight in the bubble. Plaintiff again grieved the incident, alleging that Wilson had intentionally kept the magazine from Plaintiff so that he could read it himself. Wilson denied the allegation. At Step I, Defendant Wright found Plaintiff's concern about delayed mail to be legitimate and informed Plaintiff that the issue had been discussed with housing staff and would continue to be monitored. Warden McKee agreed with the Step I respondent. At Step III, Defendant Armstrong upheld the responses at Steps I and II.

Plaintiff also complains that, on April 3, 2008, his television was confiscated without proper documentation under prison policy. Plaintiff acknowledges that he was placed on 30 days loss of privileges after being found guilty of a misconduct. He does not dispute that the television was properly taken away, but he contends that the lack of documentation violated his civil rights. He filed a grievance complaining about the lack of documentation, which was denied at all three steps of the grievance process on the grounds that the policy did not require documentation when prisoner property was taken based on a misconduct determination.

Plaintiff next contends that, when the television was returned to him on May 4, 2003, the audio component no longer worked. Plaintiff filed a grievance against the officer who returned the television, Correctional Officer Gaskill, claiming that the television had been damaged in retaliation for Plaintiff's filing of grievances on Defendants Wilson, Mask, Hickcock and Bennickson. In response to his grievance, Defendant Hull authorized Plaintiff's television being sent for repair at prison expense, and Defendants McKee and Armstrong found at Steps II and III that the grievance was resolved based on the repair authorization. Plaintiff alleges, however, that his television ultimately was returned unrepaired on August 13, 2008. He filed another grievance, which was rejected at all three steps as duplicative of the prior grievance.

Plaintiff also alleges that in July 2008 Defendant Bennickson gave him a negative review on the monthly Administrative Segregation Behavior Review form by stating that Plaintiff "has issues with officers on second" and "GETS OTHERS TO DO HIS DIRTY WORK." (Compl., Att. at 111, docket #1-3 at 18.) Plaintiff asserts that Bennickson's statements were false and that they were made in order to retaliate against Plaintiff for reporting to supervisors about his ongoing problems with certain staff. Defendant Carpenter rejected the grievance at Step I as nongrievable. The Step II and III grievances found that Plaintiff failed to allege a violation of policy.

Again on June 25, 2008, Plaintiff did not receive his <u>USA Today Sports Weekly Magazine</u> during regular mail delivery. He alleges that unnamed second-shift officers deliberately kept the magazine and lied to Plaintiff. Plaintiff received the magazine during third shift. Plaintiff filed a grievance about the delay. ARUS Walters found and Defendant Hull confirmed that the allegations could not be substantiated and directed Plaintiff, in future, to immediately inform his

ARUS in writing when he did not receive his weekly magazine. Defendants McKee and Armstrong upheld the Step I response.

On the basis of this pattern of alleged conduct, Plaintiff raises a single, compound cause of action: "Retaliatory Constitutional Violation Bad Faith Promise," ostensibly in violation of the First, Fifth and Fourteenth Amendments. Within his single count, Plaintiff alleges that he was denied equal protection, was retaliated against for filing grievances, was subjected to inhumane treatment and was deprived of his liberty and property interests in violation of due process. He also alleges that the conduct violated prison policies and the MDOC Employee Handbook. He seeks injunctive relief, together with compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. MDOC and IBC

Plaintiff may not maintain a § 1983 action against the MDOC or IBC, a prison facility within the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit specifically has held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of*

*Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of Corrections or one of its facilities) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC and IBC.

### B.      Defendants McKee, Johnson, Schooley, Livingston, Wright, Hull, Carpenter, Armstrong and MacEachern

Plaintiff fails to make specific factual allegations against Defendants McKee, Johnson, Schooley, Livingston, Wright, Hull, Carpenter, Armstrong and MacEachern, other than his claims that they failed to conduct an investigation in response to his grievances or otherwise failed to adequately address those grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to allege that Defendants McKee, Johnson, Schooley, Livingston, Wright, Hull, Carpenter, Armstrong and MacEachern engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. Equal Protection

Plaintiff alleges in a conclusory fashion that he was denied equal protection in having his mail delivered in the same manner as other similarly situated prisoners. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right under the Constitution to receive their mail the same day it enters the prison.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has failed entirely to allege that any similarly situated prisoner was treated differently. Indeed, Plaintiff's complaint indicates that he was the only prisoner receiving a regular magazine subscription. Plaintiff's allegations fall far short of stating an actionable Equal Protection claim.

### D. Eighth Amendment

Plaintiff alleges that he was subjected to "inhumane treatment" when his magazine was repeatedly delayed by some hours and when his television was not repaired as promised. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Minor delays in the delivery of reading materials and the lack of a television are not the kinds of deprivations that rise to the level of an Eighth Amendment claim. The alleged deprivations simply do not constitute either cruel or unusual punishment. *See Hudson v. Lincoln*

*Cty.*, 39 F. App'x 219, 220 (6th Cir. 2002) (the fact that segregation unit was cold and prisoner did not have access to newspapers or television did not rise to the level of a viable Eighth Amendment claim) (citing *Walker v. Mintzes*, 771 F.2d 920, 925-26 (6th Cir. 1985)); *Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) ("forcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim").

### E. Procedural Due Process

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

#### 1. Property

Plaintiff appears to allege that he was deprived of his property (his mail and his working television) without due process of law. With respect to his magazines, Plaintiff was never actually deprived of the materials; he merely had to wait a few more hours before receiving them on three occasions. No authority establishes that prisoners have a right to receive any item of mail on a date certain. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Moreover, to the extent Plaintiff contends that prison policy requires corrections officers to deliver prisoner mail immediately, the claim is not cognizable under § 1983. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State School & Hosp. v. Halderman*, 465

U.S. 89, 106 (1984). Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Plaintiff next suggests that the prison effectively took his working television without due process or adequate compensation. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent or intentional acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Indeed, Plaintiff was specifically advised of his right to seek compensation from the Prisoner Benefit Fund and the State Administrative Board. (*See* Third Step Grievance Response, Grievance No. IBC-08-05-1086-19d, docket #1-3 at 5.) Accordingly, Plaintiff's complaint will be dismissed.

2.    Liberty

Plaintiff suggests that he was deprived of his constitutionally protected liberty interest when Defendant Bennickson filed a false report about Plaintiff's behavior during one of the monthly review reviews to determine Plaintiff's continued placement in administrative segregation. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*,

155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995). Under *Sandin*, absent more, Plaintiff ordinarily has no liberty interest in whether he is placed in administrative segregation.

Here, Plaintiff clearly has failed to suggest that his segregation at IBC imposes an atypical and significant hardship beyond the ordinary administrative segregation described in *Sandin*. He does not allege that he has been kept in segregation for years on the basis of repeated false reports to which he has had no opportunity to object. Instead, he complains that on one occasion, during a monthly review of his segregation that was conducted thirty-two months after his original placement in segregation, Defendant Bennickson made statements with which Plaintiff disagreed. By his own allegations, such a report would have affected no more than a single one-month extension of his segregation, a deprivation that clearly is neither atypical nor significant under *Sandin*.

Moreover, even if Plaintiff could establish a liberty interest in his placement, it is clear from Plaintiff's complaint that he received due process of law by receiving monthly reviews of his segregation status. Due process of law entitles a person to an opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444

U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff's allegations that he received monthly reviews of his segregation status demonstrate that he has received all the process to which he could have been entitled.

### F. Retaliation

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the

defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Here, Plaintiff makes only conclusory allegations of retaliation. He states, "Since Plaintiff has been exercising his right to Petition the government for redress of grievance, defendants has [sic] been utilizing various adverse actions to deter and penalize Plaintiff from participating in Prison Administrative Grievance Process." (Compl., ¶ 10, docket #1.) He follows this statement with complaints about the failure of supervisory personnel to resolve his grievances to his satisfaction. As previously noted, a failure to investigate a grievance does not amount to active unconstitutional conduct under any theory. *See Shehee*, 199 F.3d at 300. Plaintiff has not presented any facts to support his conclusion that any individual Defendant retaliated against him because he

filed a grievances against some other officers. Indeed, the facts Plaintiff alleges run counter to any inference of retaliatory motive. First, Plaintiff clearly alleges that his magazines were withheld for a few hours so that at least one officer could read them before delivering them to Plaintiff – not because the officers wished to retaliate against Plaintiff. Second, any pattern of delaying magazines began prior to any allegation that Plaintiff had filed grievances. Third, even assuming that Plaintiff's magazines were being delayed in retaliation for the filing of grievances, a delay of a few hours in the receipt of a magazine does not amount to the sort of adverse action that would deter an ordinary person from filing a grievance. *Thaddeus-X*, 175 F.3d at 394.

Moreover, Plaintiff's allegations about his television are similarly conclusory. Plaintiff's allegation that his television was returned damaged by one officer solely because Plaintiff filed grievances against four other officers is completely unsupported by any factual allegations linking those events. Plaintiff therefore has failed to allege sufficient facts to support a causal connection between one officer's conduct and Plaintiff's complaints against other officers.

Plaintiff also suggests that Defendant Bennickson made a false statement in an Administrative Segregation Behavior Review Form at some time after Plaintiff had named Bennickson in a grievance. Bennickson's statements, however, were neither strongly negative nor highly prejudicial. Indeed, despite Plaintiff's expressions of outrage at Bennickson's statement, Plaintiff himself alleges that second shift officers were harassing him by not bringing his mail. As a consequence, Bennickson's claim that Plaintiff "ha[d] issues with officers on second" was fully consistent with Plaintiff's own allegations. Moreover, Plaintiff clearly indicates that Bennickson himself did not have authority to extend Plaintiff's segregation and that Bennickson's statement was not the only document submitted for review to the Regional Prison Administrator. The Court

therefore concludes that Bennickson's conduct was insufficiently adverse to state a claim for retaliation.

### G. State-law claims

To the extent Plaintiff asserts violations of state law, the Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state-law claims are dismissed without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 1, 2008              /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     UNITED STATES DISTRICT JUDGE